**FRANK et al. v. JORDAN VALLEY IRR. DIST., MALHEUR COUNTY.**

No. 10684.

Circuit Court of Appeals, Ninth Circuit.

May 26, 1944.

S. J. Bischoff, of Portland, Or., for appellant.

Before STEPHENS and HEALY, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

This is an appeal from the trial court's action in disapproving part of the fees and expenses of appellants as attorneys for the Bondholders Protective Committee of the debtor Irrigation District. Part of such fees and expenses accrued prior, and part of them subsequent, to the 1937 enactment of the present form of Chapter IX of the Bankruptcy Act, 11 U.S.C.A. §§ 401–404, under which the pending action was brought for a composition of the debtor's debts.

The court approved the proposed composition plan for the District.

The principal question raised on the appeal is whether the trial court had any authority under Section 83, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. a, to modify or disallow such of the fees and expenses as accrued prior to proposal of this bankruptcy proceeding, it being the contention of appellants that the court had no such authority. Appellants, however, assert that, even if the court had such authority, the total amount of fees and expenses allowed by the court is inadequate.

The whole period of appellants' service to the Bondholders Protective Committee was more than 13 years, from October, 1929, to July, 1943. During that time a number of contracts were entered into between the appellants and the Committee for the payment of appellants' attorneys fees and expenses, it being finally agreed that the Committee would pay under appellant Veness' contract for services 7% of all amounts of bond principal received by the Committee from the RFC and the District, and for appellant Frank's services an additional 3% on such amounts. Appellant Veness was to share his fees with appellant Frank (Tr. 32-33) and vice versa (Ap. Br. 15). The appellants were also to be paid or reimbursed for all expense necessarily incurred in their service to the Committee, other than the ordinary expense of appellants' law offices. In the earlier years it was provided that such expenses were to be paid out of a revolving fund to be created by limited assessments against the bondholders. Later it was agreed that the total amount of such fees and expenses was to be not in excess of $25 on each $1000 bond. Finally, after proposal of the bankruptcy composition plan, all agreements between the Committee and appellants for attorneys' fees and expenses, past and future, were ratified by the Redeposit Agreement of April 1, 1942. Under that agreement and supporting contracts appellants, subject however to their objection to the court's jurisdiction as to fees and expenses accruing prior to the emergence of the composition plan, claimed $15,285 as attorneys' fees, and also asked the court to reimburse appellant Frank for his expenses on trips to Washington, D. C., in connection with RFC loans to the District and to approve the payment to Arthur Atkins, deceased, of the sum of $970 and to appellant Frank of the sum of $850, paid to them in the earlier years of the Committee's work for their services and expenses rendered and incurred on trips from New York to Oregon.

The trial court approved the payment to appellants of the sum of only $5663 for attorneys' fees, which was 7% of the principal to be collected on the deposited bonds pursuant to the composition plan, and further approved reimbursement to appellant Frank for his actual expenses on his trips to Washington, D. C., in connection with RFC loans to the District. The court, however, disapproved of the additional 3% fee payment to appellant Frank, and further disapproved of the excessive part of the previous payment of the sums of $970 and $850 paid respectively to Arthur Atkins and appellant Frank on account of their trips from New York to Oregon. The court's order contemplates that appellant Frank's actual expenses on such RFC loan trips to Washington, D. C., and that the actual and reasonable expenses of Atkins and appellant Frank in connection with their New York to Oregon trips, will be later determined by the court and that the payments of $970 and $850 to Atkins and Frank to the extent found excessive will be accounted for by appellant Frank to the contributors.

Section 83, sub. a, of the Bankruptcy Act provides:

"* * * Where any committee, organization, group, or individual shall assume to act for or on behalf of creditors, such committee, organization, group, or individual shall first file with the court in which the proceeding is pending a list of the creditors represented by such committee, organization, group, or individual, giving the name and address of each such creditor, together with a statement of the amount, class, and character of the security held by him, and attach thereto copies of the instrument or instruments in writing signed by the owners of the bonds showing their authority, and shall file with the list a copy of the contract or agreement entered into between compensation to be received, directly or individual and the creditors represented by it or them, which contract shall disclose all compensation to be received, directly or indirectly, by such committee, organization, group, or individual, which agreed compensation shall be subject to modification and approval by the court."

Appellants contend that although Section 83, sub. a, is not expressly so limited, that

964

section as to the court's authority to modify should be confined in its application to attorneys' fees and expenses incurred directly in connection with the bankruptcy proceeding and should not be applied to such fees and expenses incurred before bankruptcy steps were taken. That contention was rejected by the trial court, because, as the special master pointed out, the language of the statute does not so limit its application and the statute says nothing about "in connection with the (bankruptcy) proceeding". The statute does, however, expressly provide that the contract for services "shall disclose all compensation to be received, directly or indirectly, by such committee * * * or individual, which agreed compensation shall be subject to modification and approval by the court." In their brief appellants cite no court decision construing the statute as they contend it should be construed, and appellant Veness stated at the hearing in the court below that he had made a study of all available cases throwing light on the proper statutory construction here, particularly the so-called Florida cases (such as American United Mut. Life Ins. Co. v. Avon Park, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860, and Ware v. Crummer & Co., 5 Cir., 128 F.2d 114), and that in no case has a court had occasion to pass on a contention like that of appellants here (Tr. 98). We know of no such case other than the lower court's decision in this case.

A consideration of the entire record, particularly appellant Veness' testimony, discloses that all the efforts of the Committee and all the services of appellant attorneys, throughout the more than 13 years prior to July, 1943, when the proposed composition plan was finally submitted to the special master, had for their single objective the readjustment of the insolvent District's bonded debt, whether by the abortive voluntary readjustment plan of January 1, 1932, before the 1937 enactment of Chapter IX of the Bankruptcy Act, or by the bankruptcy composition plan which emerged in 1941 after such Chapter IX enactment. That conclusion is further compelled by the Redeposit Agreement of April 1, 1942, which manifests the intent of appellants and the Committee that appellants' legal services to the Committee should be regarded as constituting one continuous service from beginning to end of that long period of more than 13 years. Appellant Veness himself testified that "* * * Our contract for compensation grows out of the contract of April 1st, 1942. * * * We had earlier contracts but they are merged in this final setup of the entire transaction when it was found our contract of January 1st, 1942 (1932 undoubtedly meant) was an abortive contract and the whole thing had to be remade and the attorneys cared for for past services." (Tr. 102, 103). The attorneys are now to be paid from the funds to be received by the bondholders under the composition plan (Tr. 29).

As applied to the situation as developed here under the composition plan and as developed by the Committee and the appellants themselves under the Redeposit Agreement, the statute does not limit to the fees pertaining directly to work on the composition plan the court's authority to modify and approve. The special master and the court below were right in holding that the court had jurisdiction under Section 83, sub. a, to modify and approve the fees and expenses of attorneys for the entire period of their work, both before and after the bankruptcy composition proceeding.

It cannot be successfully maintained that the court erred in modifying the fees and expenses, in disallowing the 3% attorneys fee under appellant Frank's contract, or in approving only $5663.00 (7%) for appellants' attorneys fees under the Veness contract plus certain expenses of appellant Frank, and of Arthur Atkins and appellant Frank, to be later ascertained, when all that the composition plan will yield to bondholders on their $404,500 face value of deposited bonds will be the sum of only $80,900. In view of all the circumstances the court's allowances are adequate.

The action of the trial court in this matter should be affirmed. It is so ordered.